## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Christopher Baylor,<br><br>                    Plaintiff,<br><br>v.<br><br>Ayano Eto, Heidi Wedan, Phillip C.<br>Carruthers, Kelly Motzko, Lee R.<br>Johnson, and Hennepin County Child<br>Support,<br><br>                    Defendants. | Case No. 19-cv-442 (MJD/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

Christopher Baylor, 491 Baltimore Pike, 105, Springfield PA 19064, pro se

Elizabeth F. Sauer, Liselotte D. Schluender, and Theresa Ashmead, Central Minnesota Legal Services, 430 First Avenue North, Suite 359, Minneapolis, MN 55401, for Ayano Eto

Beth A. Stack, Hennepin County Attorney's Office, 300 South Sixth Street, Suite C-2000, Minneapolis, MN 55487, for Heidi Wedan and Hennepin County Child Support

Kathryn Iverson Landrum, Minnesota Attorney General's Office, Suite 1100, 445 Minnesota Street, Suite 1100, St. Paul, MN, 55101-2128, for Phillip C. Carruthers and Kelly Motzko

Olivia Moe and Steven J. Sheridan, Fisher Bren & Sheridan, LLP, 920 Second Avenue South, Suite 975 Minneapolis, MN, 55402, for Lee R. Johnson

HILDY BOWBEER, United States Magistrate Judge

     This matter is before the Court on Ayano Eto's Motion to Dismiss [Doc. No. 21],

Heidi Wedan and Hennepin County Child Support's Motion to Dismiss [Doc. No. 27],

Lee R. Johnson's Motion to Dismiss [Doc. No. 33], and Phillip C. Carruthers and Kelly

Motzko's Motion to Dismiss [Doc. No. 40]. The motions were referred to this Court for report and recommendation by the Honorable Michael J. Davis in orders of referral dated March 29, 2019 [Doc. No. 38] and April 9, 2019 [Doc. No. 51].

I.    **The Parties and Claims**

Plaintiff Christopher Baylor ("Baylor") is married to Defendant Ayano Eto ("Eto"), and they have a child together.[1] (Eto's Mem. Supp. Mot. Dismiss at 1 n.1 [Doc. No. 23]; Sauer Aff. Ex. 1 (*Baylor v. Baylor*, Ct. File No. 27-DA-FA-17-6539, Second Am. Order for Protection ("OFP") Following Hr'g at 3 (Hennepin Cty. Dist. Ct.)) [Doc. No. 24-1]). Defendant Heidi Wedan ("Wedan") is a child support officer who works for Defendant Hennepin County Child Support (Compl. ¶ 12 [Doc. No. 1]), and the court will refer to these defendants collectively as the "Hennepin County Defendants." Defendant Phillip C. Carruthers ("Judge Carruthers") is a Hennepin County judge who issued an OFP on January 11, 2018, and Defendant Kelly Motzko ("Motzko") is a court-appointed guardian ad litem. (Sauer Aff. Ex. 1 at 6, 10.) The Court will refer to Judge Carruthers and Motzko collectively as the "Judicial Defendants." Defendant Lee R. Johnson ("Johnson") is an attorney who represented Baylor in the state court proceeding that resulted in the OFP. (Compl. ¶ 17; Johnson's Mem. Supp. Mot. Dismiss at 1 [Doc. No. 35].)

---

[1] According to Defendant Ayano Eto, her legal name is Ayano Eto Baylor. (Def.'s Mem. Supp. Mot. Dismiss at 1 n.1 [Doc. No. 23].) She took Baylor's last name when they married. (*Id.*) The Court will refer to her as "Eto" in this Report and Recommendation, however, because that is consistent with the caption and will avoid confusion with Plaintiff Christopher Baylor, to whom the Court will refer as "Baylor."

Baylor's 51-page Complaint does not enumerate precise claims; rather, potential causes of action are scattered throughout the pleading.  Generally, Baylor characterizes this action as a "request for injunctive relief challenging the constitutionality" of various federal and state statutes.  (Compl. ¶¶ 1–2.)  He seeks an injunction suspending his child support obligations, invalidating the OFP, enjoining Defendants from garnishing his wages, and prohibiting Defendants from "enforcing or moving on any provisions of" Title IV-D of the Social Security Act.  (Compl. ¶¶ 3–4.)  Baylor alleges the existence of federal question subject matter jurisdiction via 42 U.S.C. § 1983.  (Compl. ¶ 5.)

More specifically, Baylor alleges that Defendants committed fraud and duress by enforcing child support statutes.  (Compl. ¶ 22.)  He asserts that Minnesota's child support statute, Minn. Stat. § 609.375, violates the Excessive Fines and Cruel and Unusual Punishment Clauses of the Eighth Amendment because it provides for a penalty of imprisonment for individuals who fail to pay child support.  (Compl. ¶ 22(b).)  Baylor lists numerous provisions of the United States and Minnesota Constitutions and Title IV-D that he contends deprive men of equal protection.  (Compl. ¶ 22(c).)  Baylor contends that Title IV-D is invalid, and thus any withholding of his wages pursuant to Title IV-D is unlawful.  (Compl. ¶ 62.)  Baylor also characterizes Title IV-D as an unlawful bill of attainder.  (Compl. ¶ 74, 77–79.)

Baylor further alleges that Defendants' attempts to collect child support have subjected him to involuntary servitude in violation of the Thirteenth Amendment. (Compl. ¶¶ 71–73.)  Baylor also asserts that paternity of the minor child was never established, nor was he given notice of the consequences of acknowledging paternity, and

thus the child support order is void.  (Compl. ¶¶ 103–12.)  He accuses Defendants of

knowingly and willingly colluding to make fraudulent and false representations on an

application for Title IV-D benefits.  (Compl. ¶ 122.)  Baylor suggests that Eto unlawfully

used his social security number to obtain benefits, in violation of 18 U.S.C. §§ 641 and

912.  (Compl. ¶¶ 126-28.)  He claims that his constitutional parental rights were violated

because he has not been allowed to visit his daughter in Minnesota for over a year.

(Compl. ¶ 136.)

## II.    Legal Standards

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a

complaint for lack of subject matter jurisdiction.  A party contesting subject matter

jurisdiction may mount either a facial challenge or a factual challenge to a court's

jurisdiction.  *See Osborn v. United States*, 918 F.2d 724, 729–30 & n.6 (8th Cir. 1990).

On a facial attack, the court limits its consideration to the allegations of the complaint.

*Id.* at 729 & n.6.  On a factual attack, the court may consider matters outside the

pleadings without converting the motion to one for summary judgment.  *Id.*

On a motion to dismiss brought pursuant to Federal Rule of Civil Procedure

12(b)(6), the Court "must take the well-pleaded allegations of the complaint as true, and

construe the complaint, and all reasonable inferences arising therefrom, most favorably to

the pleader."  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  "To survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court has the duty to construe liberally a pro se party's pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

## III.    Eto's Motion to Dismiss

Eto filed a motion to dismiss any and all claims brought against her on the grounds of lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and failure to state a claim for relief, pursuant to Rule 12(b)(6). Eto also submitted several exhibits for the Court's consideration, all of which are judicial orders that the Court may consider in the context of the motion to dismiss. *See Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.1 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)); *Residential Funding Co., LLC v. Wallick & Volk, Inc.*, No. 13-cv-3512 (MJD/JJG), 2014 WL 3955257, at *2 (D. Minn. Aug. 13, 2014) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

### A.    Relevant State Court Proceedings

The exhibits submitted by Eto disclose the following. Baylor and Eto are married and have a child together. (*See* Sauer Aff. Ex. 1 (OFP at 3).) Eto filed a petition for an OFP on October 4, 2017, and an ex parte OFP was issued on October 5, 2017, for Eto and the minor child. (OFP at 3.) On November 17, 2017, the Honorable Philip C. Carruthers issued an OFP Following Hearing against Baylor. (OFP at 2.) On January 11, 2018, Judge Carruthers issued an amended OFP. (OFP at 2.) The OFP was affirmed by the

Minnesota Court of Appeals. *Baylor v. Baylor*, No. A18-0077, 2018 WL 2187189, at *1 (Minn. Ct. App. May 14, 2018), *review denied* (July 17, 2018).

Judge Carruthers determined in the OFP that Baylor had committed domestic abuse against Eto and the minor child. (OFP at 4.) For the safety of Eto and the child, Judge Carruthers continued previous terms and conditions of custody and parenting time, which included temporary sole legal and physical custody to Eto, no unsupervised or unrestricted parenting time with Baylor, and two hours of supervised parenting time with Baylor per week. (OFP at 6.) Baylor was ordered to pay temporary child support in the amount of $447 per month, and withholding of funds by Baylor's employer was authorized. (OFP at 7.) Judge Carruthers limited Baylor's communications to Eto to two texts per day related to urgent child issues. (OFP at 5–6.)

Eto filed a petition for dissolution of marriage on May 14, 2018. (Sauer Aff. Ex. 4 (*In re Marriage of Baylor*, Ct. File No. 17-FA-18-3158, Order at 2 (Hennepin Cty. Dist. Ct. Oct. 3, 2018)) [Doc. No. 24-1].) Baylor's motion to dismiss or transfer the venue of that matter was denied on October 3, 2018. (*Id.* at 4.) Baylor appealed, and the appeal was dismissed. (Sauer Aff. Ex. 5 (*In re Marriage of Baylor*, No. A18-1951 (Minn. Ct. App. Jan. 2, 2019)) [Doc. No. 24-1].)

### B.    Baylor's Claims Against Eto

Many of Baylor's claims against Eto attack or arise from aspects of the state court OFP. Eto argues that the Court lacks subject matter jurisdiction over these claims

6

because they are barred by the *Rooker-Feldman* doctrine.[2]  Notably, Baylor has another

ongoing case against Eto, *Baylor v. Eto*, No. 19-cv-0280 (MJD/HB) (D. Minn. filed

Feb. 5, 2019), in which Baylor brings numerous claims similar to those brought here.  *See*

*Baylor*, 19-cv-0280 (MJD/HB), R. &. R. at 2–3 (D. Minn. Apr. 29, 2019).  The Court

recommended that many claims brought in that action be dismissed pursuant to *Rooker-*

*Feldman*.  *Id.* at 6–9.

The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers

complaining of injuries caused by state-court judgments rendered before the federal

district court proceedings commenced and inviting district court review and rejection of

those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284

(2005).  Generally, state appellate courts review state district court decisions, with any

subsequent federal review limited to the United States Supreme Court under 28 U.S.C.

§ 1257.  As such, federal "appellate jurisdiction to reverse or modify a state-court

judgment is lodged . . . exclusively in [the Supreme Court]."  *Exxon Mobil Corp.*,

544 U.S. at 283.

*Rooker-Feldman* applies not only to "the rare case styled as a direct appeal," *Simes*

*v. Huckabee*, 354 F.3d 823, 827 (8th Cir. 2004), but also to attempts to litigate different

claims that are nevertheless "inextricably intertwined" with the state-court judgment,

*D.C. Ct. App. v. Feldman*, 460 U.S. 462, 482 n.16 (1983).  *See also Lemonds v. St. Louis*

---

[2]  This doctrine is named after the two Supreme Court cases from which it derived: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals. v. Feldman*, 460 U.S. 462 (1983).

*Cty.*, 222 F.3d 488, 492 (8th Cir. 2000) ("The *Rooker-Feldman* doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions.").  The *Rooker-Feldman* doctrine is frequently applied to bar federal-court challenges to state-court divorce and custody proceedings.  *E.g.*, *O'Grady v. Anoka Cty. Bd. of Comm'rs*, 333 F. App'x 147, 147–48, 2009 WL 3208736, at *1 (8th Cir. 2009); *Ballinger v. Culotta*, 322 F.3d 546, 549 (8th Cir. 2003); *Christ's Household of Faith v. Ramsey Cty.*, 618 F. Supp. 2d 1040, 1044–47 (D. Minn. 2009).

> There are four requirements for *Rooker-Feldman* to apply:
>
> (1) the federal court plaintiff must have lost in state court, (2) the plaintiff must complain of injuries caused by a state court judgment, (3) the plaintiff must invite district court review and rejection of that judgment, and (4) the state court judgment must have been rendered before the district court proceedings commenced.

*Christ's Household of Faith v. Ramsey Cty.*, 618 F. Supp. 2d 1040, 1044 (D. Minn. 2009) (citing *Skit Int'l, Ltd. v. DAC Techs. of Ark., Inc.*, 487 F.3d 1154, 1156–57 (8th Cir. 2007)).

All four requirements are present here with respect to many of Baylor's claims.  First, Baylor "lost" in state court in that an OFP was issued against him on January 11, 2018.  Second, Baylor's challenges to the withholding of wages, the collection of child support, visitation, and paternity, and his Eighth Amendment and Thirteenth Amendment claims, are either direct challenges to or inextricably intertwined with that state court order.  Third, by asking this Court to issue an injunction suspending his child support obligations, invalidate a state court judgment concerning parenting time, enjoin Defendants from garnishing his wages, and prohibit Defendants from "enforcing or

moving on any provisions of" Title IV-D of the Social Security Act, Baylor has invited this Court to review and reject the state court judgment.  Fourth, the OFP was issued before Baylor commenced this case.  The Court therefore concludes that the claims described above are barred by the *Rooker-Feldman* doctrine.

Insofar as Baylor is challenging any aspect of the ongoing marital dissolution proceeding, such as future child support obligations, that claim would be precluded by the *Younger* abstention doctrine.  Under *Younger v. Harris*, 401 U.S. 37 (1971), "federal courts should abstain from exercising their jurisdiction if (1) there is an ongoing state proceeding, (2) that implicates important state interests, and (3) that provides an adequate opportunity to raise any relevant federal questions."  *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1249 (8th Cir. 2012).  These three factors are present here.  First, there is an ongoing marital dissolution proceeding.  Second, Minnesota has important state interests in domestic relations and family matters.  *Carlson v. Cty. of Ramsey*, No. 16-cv-765 (SRN/BRT), 2016 WL 3352196, at *6 (D. Minn. June 15, 2016) (citations omitted), *aff'd*, 673 F. App'x 601 (8th Cir. 2017).  Third, Baylor may raise any federal constitutional claims or other claims in the state proceeding.  Accordingly, abstention is warranted to the extent any of Baylor's claims seek to interfere with the ongoing state court marital dissolution proceeding.

To the extent Baylor asserts any claims against Eto pursuant to § 1983, those claims fail because Eto is not a state actor. To state a claim under § 1983, a plaintiff must allege that "(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal

9

right." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009).  Thus, "[o]nly state actors can be held liable under § 1983." *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001).  Baylor has not alleged facts to support a plausible inference that Eto is a state actor.  Eto is a private citizen.  Her use of the state court system did not transform her into a state actor.  *See Harley v. Oliver*, 539 F.2d 1143, 1146 (8th Cir. 1976); *see also Owens v. Welch*, No. 09-cv-2011, 2009 WL 1203716, at *3 (W.D. Ark. May 1, 2009) (determining that obtaining a custody and child support order was not state action).

A private individual may be liable for conspiracy to violate another individual's constitutional rights under § 1983 if she was "a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).  The plaintiff must adequately plead, in addition to the elements of a § 1983 claim, a meeting of the minds or a mutual understanding between the private individual and the state actor.  *Mershon v. Beasley*, 994 F. 2d 449, 451 (8th Cir. 1993).  "Mere allusion to a conspiracy is insufficient; the conspiracy must be pleaded with specificity and factual support." *Cassell v. Cty. of Ramsey*, No. 10-cv-4981 (JRT/TNL), 2012 WL 928242, at *5 (D. Minn. Mar. 19, 2012), *aff'd*, 490 F. App'x 842, 2012 WL 5416520 (8th Cir. 2012).  Here, Baylor has not pleaded with specificity and factual support such a meeting of the minds or mutual understanding.  Nor has Baylor alleged sufficient facts from which the Court could reasonably infer a violation of a constitutionally protected federal right, as discussed more fully below.  Therefore, his conspiracy claim against Eto fails.

10

Finally, Baylor claims that Eto unlawfully used his social security number to obtain benefits, in violation of 18 U.S.C. §§ 641 and 912. Both of these statutes are criminal statutes. As a general matter, private citizens lack standing to enforce criminal statutes. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Jones v. Clinton*, 206 F.3d 811, 812 (8th Cir. 2000) (stating a private individual does not have standing to bring an action for criminal contempt). Baylor has not shown or argued otherwise with respect to the criminal statutes he invokes here. Consequently, his claim that Eto unlawfully used his social security number to obtain benefits should be dismissed.

### C.    Potential New Claims Raised in Baylor's Opposition

In Baylor's memorandum in opposition to the motion to dismiss, he alleges that Eto committed abuse of process by misusing court proceedings and committed fraud by obtaining the orders for protection. (Baylor's Resp. Eto's Mot. Dismiss at 1–2, 9, 11 [Doc. No. 46].) To the extent Baylor's argument could be construed as a request for leave to amend his complaint, amendment would be futile because such claims would be barred by *Rooker-Feldman*.

### IV.    The Judicial Defendants' Motion to Dismiss

The Judicial Defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). They submitted several judicial orders and other public court documents, which the Court may consider in the context of the motion to dismiss.

### A.    Relevant State Court Proceedings

The Court incorporates by reference the facts set forth in Part III.A *supra*. The following additional facts are also relevant.

Baylor filed a petition for an OFP against Eto in December 2017. (*See* Landrum Aff. Ex. H (*In re Baylor v. Baylor*, Ct. File No. 62-DA-FA-17-1492, Domestic Abuse Order for Dismissal at 1 (Ramsey Cty. Dist. Ct. Dec. 28, 2017)) [Doc. No. 44-1].) The petition was dismissed because Baylor's allegations did not rise to the level of domestic abuse. (*Id.*) Baylor filed a petition for a harassment restraining order against Eto and two of her attorneys in September 2018. (*See* Landrum Aff. Ex. J (*In re Baylor v. Baylor*, Ct. File No. 62-HR-18-737, Order Denying Harassment Restraining Order After Hearing at 1 (Ramsey Cty. Dist. Ct. Sept. 27, 2018)) [Doc. No. 44-1].) The petition was denied. (*Id.*) Neither Judge Carruthers nor Motzko had any involvement in those proceedings.

On August 18, 2018, Baylor filed a motion to dismiss or transfer the marriage dissolution action. (*See* Landrum Aff. Ex. L (*In re Marriage of Baylor*, Ct. File No. 27-FA-18-3158, Order at 2 (Hennepin Cty. Dist. Ct.)) [Doc. No. 44-1].) That motion was denied by the Honorable Michael K. Browne, who is not a party to this action. Baylor then petitioned for a writ of mandamus to compel the state district court to dismiss the dissolution proceeding; that petition was also denied. (Landrum Aff. Ex. M (*In re Marriage of Baylor*, No. A18-2037, slip op. at 4 (Minn. Ct. App. Jan. 8, 2019)) [Doc. No. 44-1].) Baylor's second petition for a writ of mandamus was also denied. (Landrum Aff. Ex. N (*In re Marriage of Baylor*, No. A19-0071, slip op. at 4 (Minn. Ct. App. Jan. 29, 2019)) [Doc. No. 44-1].)

B.    **Baylor's Claims Against the Judicial Defendants**

1.    **Constitutional Claims**

Baylor challenges the constitutionality of numerous Minnesota statutory

provisions governing child support, including Minn. Stat. § 256.741 (child support and

maintenance), § 518A.27–39 (computation of basic support), § 518A.53–63 (child

support payment and collections), and § 518A.64–75 (child support enforcement).

(Compl. ¶¶ 1–2.)  Baylor simply lists these statutes, and others, without explaining

precisely why they are unconstitutional either on their face or as applied to him.  (*See*

Compl. ¶¶ 2, 22(c).)  A complaint "that offers labels and conclusions or . . . tenders naked

assertions devoid of further factual enhancement" cannot survive a motion to dismiss.

*Iqbal*, 556 U.S. at 678 (cleaned up).  Consequently, Baylor's challenges to the

constitutionality of the listed statutes, which are no more than legal conclusions couched

as factual allegations, *see id.*, should be dismissed.

In addition, the Judicial Defendants are not parties against whom Baylor may

bring a constitutional claim.  "When a statute is challenged as unconstitutional, the proper

defendants are the officials whose role it is to administer and enforce the statute."

*281 Care Comm. v. Arneson*, 638 F.3d 621, 631 (8th Cir. 2011).  A judge who acts as an

adjudicator is not a proper defendant to a § 1983 challenge to the constitutionality of a

statute.  *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 620 (E.D. Pa.), *aff'd*, 572 F. App'x 68,

2014 WL 3309172 (3d Cir. 2014).

Finally, Baylor did not comply with Federal Rule of Civil Procedure 5.1, which

requires a party who challenges the constitutionality of a state statute to promptly (1) file

13

notice of the constitutional question; and (2) serve notice that a state statute is being

challenged on the Minnesota Attorney General by certified or registered mail or by

electronic means specifically authorized for such service.  Fed. R. Civ. P. 5.1(a).

Because Baylor sued the Judicial Defendants in their official capacities, and the

Minnesota Attorney General has appeared on their behalf, the notice requirement of Rule

5.1(a)(1)(B) is fulfilled.  However, Baylor did not comply with the service requirement of

Rule 5.1(a)(2).  A court may decline to consider constitutional arguments raised by a

plaintiff who does not comply with Rule 5.1.  *See Jones v. U-Haul Co. of Mass. & Ohio

Inc.*, 16 F. Supp. 3d 922, 941 (S.D. Ohio 2014).

## 2. *Rooker-Feldman* **and** *Younger*

Many of Baylor's claims against the Judicial Defendants attack or claim injuries

arising from the OFP issued by Judge Carruthers.  Those claims are barred by *Rooker-

Feldman*, as discussed in Part III.B. above.  Baylor argues that his claims may survive

*Rooker-Feldman* because the Judicial Defendants acted fraudulently, but "[t]he Eighth

Circuit has declined to adopt the fraud exception, indicating that it is unwilling to create

piecemeal exceptions to the *Rooker-Feldman* doctrine."  *Eiler v. Avera McKennan Hosp.*,

No. 14-4192, 2016 WL 1117441, at *3 (D.S.D. Mar. 21, 2016) (citing *Fielder v. Credit

Acceptance Corp.*, 188 F.3d 1031, 1035–36 (8th Cir. 1999)), *aff'd*, 672 F. App'x 619,

2017 WL 31499 (8th Cir. 2017).  To the extent Baylor challenges the ongoing marital

dissolution proceedings, those claims are precluded by the *Younger* abstention doctrine,

also discussed above.

### 3.    Judicial and Quasi-Judicial Immunity

All of Baylor's claims against Judge Carruthers are also barred by judicial immunity.  "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction."  *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967) (citing *Bradley v. Fisher*, 13 Wall. 335 (1872)).  Judges are absolutely immune from civil lawsuits alleging misconduct during the performance of their judicial functions, "even when the judge is accused of acting maliciously and corruptly."  *Pierson*, 386 U.S. at 554.  There are two exceptions to judicial immunity: (1) "a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity"; and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991).

Baylor is clearly challenging Judge Carruthers' rulings.  (*See* Pl.'s Mem. Opp'n Mot. Dismiss at 2 [Doc. No. 54] (arguing that Judge Carruthers "knowingly and fraudulently incorporated an order within an order, known to cause substantial and significant burden to Baylor who was unemployed"); Pl.'s Mem. Opp'n Mot. Dismiss at 6 (referring to Judge Carruthers' "erroneous order for support").)  Baylor suggests that Judge Carruthers acted outside his judicial capacity when he entered an order establishing child support, which Baylor characterizes as an administrative act.  (*Id.* at 7, 18.)  To the contrary, the issuance of an order governing child support, visitation, custody, and related matters is a judicial act, and the judge who entered the order is entitled to judicial immunity.  *Glasspoole v. Albertson*, 491 F.2d 1090, 1091 (8th Cir. 1974); *Greene v.*

15

*Gassman*, No. 11-cv-0618 (PJS/TNL), 2012 WL 748374, at *5 n.8 (D. Minn. Mar. 6, 2012), *aff'd*, 489 F. App'x 997, 2012 WL 5233517 (8th Cir. 2012) (citing *Glasspoole*). To the extent Baylor argues that Judge Carruthers acted in the complete absence of jurisdiction, Minnesota state district courts are courts of general jurisdiction. *See* Minn. Stat. § 484.01, subd. 1. The scope of a judge's jurisdiction should be construed broadly when judicial immunity is at issue. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)). Even if Judge Carruthers erred in some manner, such an error would not deprive him of jurisdiction. *See Stump*, 435 U.S. at 356.

Baylor's claims against Motzko are based on actions she took in the performance of her official duties as a guardian ad litem. These claims are barred by absolute quasi-judicial immunity, as set forth below.

A state court must appoint a guardian ad litem in a child custody or marital dissolution proceeding "if the court has reason to believe that the minor child is a victim of domestic child abuse or neglect." Minn. Stat. § 518.165, subd. 2. The responsibilities of guardians ad litem include investigating facts relevant to the family's situation, advocating for and monitoring the child's best interests, presenting written reports, and making recommendations to the court. *Id.* § 518.165, subd. 2a. "It is well settled that officials," such as guardians ad litem, "are entitled to absolute immunity from civil rights suits for the performance of duties which are 'integral parts of the judicial process' as long as the judicial function was granted immunity under common law at the time § 1983 was enacted." *Dornheim v. Sholes*, 430 F.3d 919, 925 (8th Cir. 2005) (quoting *Briscoe v.*

16

*LaHue*, 460 U.S. 325, 335 (1983)).  This grant of immunity has been extended to guardians ad litem.  *Id.*

In *Myers v. Morris*, the Eighth Circuit determined that guardians ad litem "have absolute immunity for any damage claims based on the function of testifying before the family court" and for "providing their reports and recommendations to the family court." 810 F.2d 1437, 1466 (8th Cir. 1987), *cert. denied*, 484 U.S. 828 (1987), *abrogated on other grounds by Burns v. Reed*, 500 U.S. 478 (1991).  The Eighth Circuit noted that the guardians "were appointed to fulfill quasi-judicial responsibilities under court direction" and that the court "exercised its statutory authority to seek the assistance of experts" to aid making child custody and placement decisions.  *Id.* at 1467.  Whether immunity applies turns on the specific conduct at issue and the nature of the duties.  *Robinson v. Freeze*, 15 F.3d 107, 109 (8th Cir. 1994).

Here, Motzko attended proceedings (OFP at 1) and made recommendations to the state court (Compl. ¶ 16.)  Simply because her recommendations were adverse to Baylor does not defeat her entitlement to absolute quasi-judicial immunity.

### 4.    Official-Capacity Claims

With respect to any § 1983 claims brought against the Judicial Defendants in their official capacities, those claims are treated as having been brought directly against the State of Minnesota.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978). Insofar as Baylor is seeking monetary damages, those claims fail because Minnesota has not waived its Eleventh Amendment immunity from suit for such claims, *see Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997), and Congress did not abrogate that

immunity by enacting § 1983, *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Any official-capacity § 1983 claims for injunctive relief fail for the reasons discussed above.

### 5. Individual-Capacity Claims

To the extent Baylor brought his § 1983 claims against the Judicial Defendants in their individual capacities, those claims should be dismissed on the basis of qualified immunity. "Qualified immunity shields government officials performing discretionary functions from civil liability unless their conduct violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012).

The Court has already recommended dismissal of many constitutional claims on the basis that Baylor failed to explain why the statutes were unconstitutional either on their face or as applied to him. As set forth below, Baylor's other, more detailed claims fail because his allegations do not rise to the level of a clearly established constitutional violation.

With respect to Baylor's allegations that the United States and Minnesota Constitutions and Title IV-D deprive men of their rights, his broad and conclusory claim of sexism is insufficient to state a plausible equal protection claim. *See Pigott v. Corr. Corp. of Am.*, No. 07-cv-2003 (JNE/JJG), 2008 WL 3244001, at *4 n.5 (D. Minn. Aug. 6, 2008) (finding conclusory allegation insufficient to state a race discrimination claim under the Equal Protection Clause). As to his Thirteenth Amendment claim, mandatory child support payments do not constitute slavery. *United States v. Ballek*, 170 F.3d 871, 874 (9th Cir. 1999) ("We conclude that child-support awards fall within that narrow

18

class of obligations that may be enforced by means of imprisonment without violating the constitutional prohibition against slavery."); *Agur v. Wilson*, 498 F.2d 961, 964 n.3 (2d Cir. 1974) (deeming frivolous the argument that incarcerating a person for not paying child support would violate the Thirteenth Amendment); *Adams v. Cty. of Calhoun*, No. 1:16-CV-678, 2018 WL 1324465, at *2 (W.D. Mich. Mar. 15, 2018) ("There is no comparison between paying court-ordered child support and compulsory, involuntary servitude.").

### 6.    Title IV-D

Baylor contends that Title IV-D is unconstitutional and "has no legal force" because the entirety of Title 42 of the United States Code "was never enacted into positive law, and remains a non-positive law title."  (Compl. ¶¶ 46 (emphases omitted), 52.)  Title IV-D is a part of the Social Security Act that sets forth certain requirements the States must follow with respect to child support collection and enforcement in order to receive federal funding.  *See* 42 U.S.C. §§ 651, 654.

Baylor's arguments regarding positive and non-positive laws are without merit. "Congress's failure to enact a title into positive law has only evidentiary significance and does not render the underlying enactment invalid or unenforceable."  *Ryan v. Bilby*, 764 F.2d 1325, 1328 (9th Cir. 1985) (discussing Title 26); *see United States v. Romig*, No. 00-cr-355 (JMR/RLE), 2003 WL 22143730 (D. Minn. Aug. 18, 2003) (discussing Title 21).  When Congress properly passes a bill and the President signs it, "the resulting statute is duly enacted and enforceable."  *United States v. Petersen*, No. 09-cr-87 (DWF/AJB), 2009 WL 3062013, at *5 (D. Minn. Sept. 18, 2009).

> Enacting a statute into positive law simply means that Congress has given its authority to the language as it appears in that particular title of the United States Code such that the Code can be taken as authoritative and need not be checked or verified with the corresponding section in the original Statutes at Large.

*Id.* A statute that is not positive law does not mean the statute is invalid. *Id.* "It simply means that any discrepancy between the statute as codified in the U.S. Code and the Act that Congress passed must be resolved in favor of the version as reflected in the Statutes at Large." *Id.* Baylor has not identified any discrepancy between Title VII as codified in Title 42 of the United States Code  and the Social Security Act as passed.

Baylor also argues that Title IV-D is an unlawful bill of attainder.  A bill of attainder is essentially "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977).  Baylor's bill-of-attainder claim fails because Title IV-D did not single him out for punishment and he was not deprived of judicial process or remedies.

Finally, with respect to Baylor's accusation that Defendants knowingly and willingly colluded to make fraudulent and false representations on an application for Title IV-D benefits, there is no private right of action for social security fraud.  *See Hudson v. Trillium Staffing*, No. 18-cv-473 (JRT/DTS), 2018 WL 1939495, at *2 (D. Minn. Mar. 14, 2018), *R. & R. adopted*, 2018 WL 1936016 (D. Minn. Apr. 24, 2018).

### C.     Potential New Claims Raised in Baylor's Opposition

In his opposition to the motion to dismiss, Baylor suggests that Motzko's recommendation to the state court was erroneous because it was not founded on evidence

and she was biased against him.  To the extent this argument could be construed as a request to amend, leave should be denied because amendment would be futile.  The alleged false and inaccurate reporting by a guardian ad litem does not deprive her of quasi-judicial immunity.  *Kent v. Todd Cty.*, No. 99-cv-44 (JRT RLE), 2001 WL 228433, at *8 (D. Minn. Feb. 21, 2001) (citing *Weseman v. Meeker Cty.*, 659 F. Supp. 1571, 1577–78 (D. Minn. 1987)).  Nor do claims of malice or bad faith.  *Id.* (citing *Demoran v. Witt*, 781 F.2d 155, 158 (9th Cir. 1986)).

## V.    Johnson's Motion to Dismiss

Baylor alleges that Johnson failed to provide effective assistance of counsel in the state court proceeding that resulted in the OFP.  (Compl. ¶ 17.)  Johnson moves to dismiss Baylor's claim against him pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

There is no right to effective assistance of counsel in a civil case; the proper cause of action is legal malpractice.  *See Glick v. Henderson*, 855 F.2d 536, 541 (8th Cir. 1988).  The four elements of a legal malpractice claim are: "(1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; (4) that but for defendant's conduct the plaintiff would have been successful in the prosecution or defense of the action."  *Blue Water Corp. v. O'Toole*, 336 N.W.2d 279, 281 (Minn. 1983).  Baylor has not alleged any acts constituting negligence or breach of contract, any facts that would suggest causation of damages, or any facts that would support a reasonable inference that

Baylor would have succeeded in the state court proceedings, absent Johnson's conduct. Consequently, the Court recommends that the claim against Johnson be dismissed.

In Baylor's response to Johnson's motion to dismiss, Baylor makes numerous new assertions such as that Johnson colluded and conspired with state officials in depriving him of his constitutional rights, failed to challenge venue in the child support proceeding, concealed material facts, submitted a false declaration, and released a witness without requiring his testimony. Although Baylor has not requested leave to amend, to the extent his arguments could be construed as such, the Court recommends that leave be denied on the basis that the new allegations would be futile. The allegations would not save his legal malpractice claim because they do not raise a reasonable inference that Johnson acted negligently or in violation of a contract, that Johnson's acts were the cause of any damages, or that but for Johnson's conduct Baylor would have succeeded in the state court proceedings. To the extent the new assertions seek to overturn a state court ruling or indirectly undermine a state court decision, the amendments would be barred by *Rooker-Feldman*. Any new claim for fraud or misrepresentation fails because Baylor has not stated the circumstances constituting fraud or misrepresentation with particularity. *See* Fed. R. Civ. P. 9(b); *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). As to any potential conspiracy claim, Baylor does not describe with specificity a meeting of the minds among the conspirators, nor has he alleged a viable deprivation of a constitutional right. *See White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). To the extent Baylor would seek leave to allege a § 1983 claim against Johnson, a lawyer's conduct in representing a client generally "does not constitute action

22

under color of state law for purposes of section 1983 violations." *Holbird v. Armstrong-Wright*, 949 F.2d 1019, 1020 (8th Cir. 1991). Baylor has not identified any exceptional circumstances that would warrant a departure from this general rule.

## VI. The Hennepin County Defendants' Motion to Dismiss

The Hennepin County Defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

### A. Relevant State Court Proceedings

The Court incorporates by reference all of the facts set forth above. In addition, the Court considers the two judicial orders and case information for *In re Marriage of Baylor*, Case No. A18-2037, submitted by the Hennepin County Defendants. (Stack Decl. Exs. 1–3 [Doc. No. 31].)

### B. Baylor's Claims Against the Hennepin County Defendants

Most of Baylor's claims against the Hennepin County Defendants overlap with his claims against the other Defendants, including, *inter alia*, a challenge to the OFP, a request to enjoin the collection of child support, constitutional challenges, a challenge to Title IV-D, and § 1983 claims. Insofar as these claims overlap with the claims discussed above, the Court recommends that the claims against the Hennepin County Defendants be dismissed for the same reasons.

The Hennepin County Defendants also ask that Baylor's claims against Hennepin County Child Support be dismissed because a department or agency of a municipal corporation such as Hennepin County is not a legal entity subject to suit. It is true that an agency or department of a county is not an independent legal entity subject to suit.

23

*Lindsey v. City of Minneapolis*, No. 15-cv1202 (WMW/BRT), 2016 WL 3360485, at *4 (D. Minn. June 16, 2016); *Follis v. Minn. Atty. Gen.*, No. 08-cv-1348 (JRT/RLE), 2010 WL 3399674, at *7 (D. Minn. Feb. 16, 2010), *R. & R. adopted*, 2010 WL 3399958 (D. Minn. Aug. 26, 2010); *Eaton v. Minn. Atty. Gen.'s Office*, No. 10-cv-1804 (JRT/FLN), 2011 WL 1195777, at 4 (D. Minn. Mar. 28, 2011). Consequently, all claims against Hennepin County Child Support should be dismissed.

Specifically as to Wedan, Baylor did not specify whether he is suing Wedan in her official capacity or her individual capacity; thus, the Court presumes Wedan is sued only in her official capacity. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). When a public employee is sued in her official capacity, the lawsuit becomes "an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978). The true defendant is the governmental entity, not the named official. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). A local government cannot be sued, however, for an injury inflicted solely by one of its employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. at 694. Governmental entities "are not vicariously liable under § 1983 for their employees' actions," but are "responsible only for their own illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (cleaned up). "Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

Here, Baylor's claim against Hennepin County fails because vicarious liability is not applicable to § 1983 claims, and Baylor has not pleaded that Hennepin County had a policy or custom that "played a part in the violation of federal law." *See Kentucky v.*

24

*Graham*, 473 U.S. 159, 166 (1985).  To the extent that Baylor argues that the collection of child support is unconstitutional, the Court has already rejected that argument.

### C.    Potential New Claims Raised in Baylor's Opposition

Baylor submits in his opposition to the motion to dismiss that he intended to sue Wedan in her individual capacity.  (Pl.'s Resp. at 1 [Doc. No. 47].)  To the extent this argument could be construed as a request to amend, leave should be denied because Wedan is entitled to qualified immunity.  The only allegation of Wedan's specific conduct is that she participated in the collection and enforcement of Baylor's court-ordered child support.  This does not plausibly suggest that Wedan violated a clearly established right.

Baylor also argues that the state district court scheduled an "evidentiary" hearing, not a "child support" hearing, which violated his right to due process.  To the extent this argument could be construed as a request to amend, leave should be denied because this allegation does not pertain to the Hennepin County Defendants.  The same is true for Baylor's suggestion that he did not receive adequate notice and a hearing before child support was collected.  The Hennepin County Defendants were not directly involved with or responsible for scheduling the hearing or providing notice of the hearing.

Finally, Baylor contends that the Hennepin County Defendants engaged in fraud to obtain his compliance with child support.  The alleged fraud, however, was the statutorily authorized enforcement of child support obligations.  Thus, to the extent this argument could be construed as a request for leave to amend, the request should be denied as futile.

## VII.    Recommendation

For the reasons set forth above, the Court recommends that all of Baylor's claims in this action be dismissed.  The Court further recommends that dismissal be with prejudice because it is not likely that Baylor could allege additional facts that would save any of his claims.  *See Jackson v. Walgreens Co.*, No. 16-0398 (JRT/FLN), 2016 WL 4212258, at *2 (D. Minn. Aug. 10, 2016).

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Ayano Eto's Motion to Dismiss [Doc. No. 21] be **GRANTED**;

2. Heidi Wedan and Hennepin County Child Support's Motion to Dismiss [Doc. No. 27] be **GRANTED**;

3. Lee R. Johnson's Motion to Dismiss [Doc. No. 33] be **GRANTED**; and

4. Phillip C. Carruthers and Kelly Motzko's Motion to Dismiss [Doc. No. 40] be **GRANTED**.


Dated: May 30, 2019                            s/ *Hildy Bowbeer*
                                                      HILDY BOWBEER
                                                      United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under District of Minnesota Local Rule 72.2(b)(1), "[a] party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the formatting parameters set forth in LR 72.2(c).